RICHARD CART, Plaintiff-Appellant, *v.* RICHARD DeROBERTIS *et al.*, Defendants-Appellees.

Third District   No. 3—83—0019

Opinion filed September 2, 1983.—Rehearing denied September 27, 1983.

Richard Cart, of Joliet, for appellant, *pro se.*

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Kenneth A. Wilhelm, both of State's Attorneys Appellate Service Commission, of counsel), for appellees.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The plaintiff, Richard Cart, appeals from the denial of his petition for a writ of *habeas corpus.* The plaintiff has proceeded *pro se* on appeal. We interpret the plaintiff's arguments on appeal to be whether the State of New York violated article III of the Interstate Agreement on Detainers and whether he was denied due process of law because the State of New York failed to promptly hold a parole violation hearing.

The plaintiff was on parole from the State of New York when, in December of 1979, he was charged with conspiracy to commit murder by the State of Illinois. Immediately thereafter, New York issued a parole violation warrant. In January of 1980, the plaintiff asked for a prompt parole violation hearing and waived his right to be present at the hearing. The plaintiff was convicted of the Illinois charge on May 27, 1980.

In December of 1980, Illinois acknowledged receipt of the parole

violation warrant. In February of 1981, New York requested custody of the plaintiff. This request was denied by Illinois on March 10, 1981. At this time, Illinois informed New York that the warrant would be placed in the plaintiff's file. On July 24, 1981, the plaintiff filed a petition for *mandamus*, asking that Illinois be ordered to transfer him to New York. The plaintiff's petition was denied.

The plaintiff was released from the Illinois Department of Corrections on September 6, 1982. On September 13, 1982, an Illinois Governor's warrant was issued for the plaintiff based on his violation of parole. Following a hearing, custody of the plaintiff was granted to New York and the plaintiff's petition for a writ of *habeas corpus* was denied on December 28, 1982. The trial court refused to quash the Governor's warrant or the detainer. It is from this decision that the plaintiff now appeals.

The plaintiff argues initially that the delay in holding his parole violation hearing is a violation of the provisions of article III of the Agreement on Detainers (hereafter the Agreement), codified in Illinois as section 3—8—9 of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1003—8—9). Specifically, the plaintiff contends that he should have been granted a hearing within 180 days of his request in January of 1980 for a prompt parole violation hearing. Article III of the Agreement provides in relevant part:

> "(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint ***." Ill. Rev. Stat. 1981, ch. 38, par. 1003—8—9.

■ We find that the plaintiff has no claim for relief under the Agreement because the facts of this case do not place the plaintiff within the scope of the Agreement. The Agreement covers those situations where one imprisoned by the custodial State has a detainer based upon "any untried indictment, information or complaint" lodged against him. The warrant in the instant case was not based on an untried indictment, information or complaint, but on a violation of the plaintiff's parole.

The courts of Illinois have not addressed the question of whether a parole violation is an untried indictment, information or complaint. The courts of several of our sister States have considered this question in reference to their codifications of the Agreement. They have consistently held that a detainer based upon a parole violation warrant does not fall within the purview of the Agreement on Detainers. *Buchanan v. Michigan Department of Corrections* (1973), 50 Mich. App. 1, 212 N.W.2d 745; *Maggard v. Wainwright* (Fla. App. 1982), 411 So. 2d 200; *Blackwell v. State* (Tenn. Crim. App. 1976), 546 S.W.2d 828; *Haley v. State* (1980), 47 Md. App. 45, 421 A.2d 982; *Engs v. District Court* (Okla. Crim. 1982), 645 P.2d 1035; *State v. Knowles* (S.C. 1980), 270 S.E.2d 133; *Suggs v. Hopper* (1975), 234 Ga. 242, 215 S.E.2d 246. See also *Hernandez v. United States* (W.D. Okla. 1981), 527 F. Supp. 83; Annot., 98 A.L.R.3d 160, 184 (1980).

■ We concur in the reasoning of these cases and hold that the provisions of the Agreement are not applicable to detainers based upon parole violation warrants. The plaintiff was not entitled to the benefit of the procedures established by the Agreement. The State of New York was not obligated under the Agreement to provide him with a hearing within 180 days.

■ We next consider whether the plaintiff was denied due process by the failure of New York State to promptly conduct a parole violation hearing. Based upon the decision in *Moody v. Daggett* (1976), 429 U.S. 78, 50 L. Ed. 2d 236, 97 S. Ct. 274, we find that the plaintiff was not denied due process. The defendant Moody was on parole from a Federal prison when he was imprisoned for a second crime in a different Federal prison. The government issued a warrant based on Moody's parole violation but did not execute the warrant until after Moody was released from the second prison. Moody argued that the lack of a prompt hearing on his parole violation denied him his right to due process. He requested that the parole violation warrant be dismissed.

■ The Supreme Court held that a parole violator does not suffer the loss of his constitutionally protected liberty interest until the execution of the parole violation warrant and custody under the warrant. A parole violator's freedom is a liberty interest protected by the due process clause. Because there is no loss of this protected liberty interest until execution and custody, the parole violator has no due process right to a prompt hearing until such time as he is deprived of his freedom. The court therefore held that the Federal Parole Commission had no constitutional duty to provide Moody with a parole violation hearing until Moody was taken into custody by execution of the warrant.

We believe the decision in *Moody* is dispositive of the plaintiff's argument. The fundamental holding in *Moody* is that a parole violator has no due process rights to a prompt hearing on his parole revocation if he is in prison for a different offense until he is taken into custody for parole violation. Therefore, as Mr. Justice Stevens noted in his dissent in *Moody*, a paroling authority could wait for as long as 10 or 20 years after commencing revocation of parole before granting a parole revocation hearing. We do not consider the fact that Moody was both paroled and imprisoned by the Federal government to be sufficient to distinguish *Moody* from the instant case. We therefore hold that the plaintiff was not deprived of his due process rights by the State of New York's failure to grant him a prompt hearing on his revocation of parole.

The State of New York could have conducted the hearing on the revocation of the plaintiff's parole while he was incarcerated in Illinois since he specifically waived his right to be present. New York chose not to do so. The plaintiff had no right under either the Agreement on Detainers or the due process clause to be granted a prompt hearing on his parole violation. There is therefore no basis on which we may quash the Governor's warrant or the detainer.

The judgment of the circuit court of Will County is affirmed.

Affirmed.

ALLOY and HEIPLE, JJ., concur.